IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE FLYNN COMPANY,** *Plaintiff* v. **EASTERN METAL RECYCLING - TERMINAL, LLC,** *Defendant* | Case No. 2:19-cv-02495-JDW |

## MEMORANDUM

More than other transactions, real estate transactions focus on formalities. Pennsylvania's General Assembly requires real estate brokers to have written agreements with their clients if they want to obtain a commission. The rule can be harsh. A broker can do substantial work based on a handshake and have no remedy if the client refuses to pay. It is not for the Court to decide if the rule is too harsh, though. Pennsylvania's General Assembly can require written agreements and displace common law remedies like implied-in-fact contracts and unjust enrichment claims.

When The Flynn Company entered into a written exclusive listing agreement with Eastern Metal Recycling Terminal LLC ("EMR"), it followed the rules. It did so twice more when it entered into written extensions of that agreement. It kept working after the agreement expired, though. That's where it got into trouble because it no longer had a written agreement. It wants the Court to rescue it from its failure to comply with the requirement that there be a written agreement. The Court cannot do so. It will grant EMR's summary judgment motion and deny Flynn's motion.

## I.  BACKGROUND

### A.  Flynn's Marketing of The Eddystone Property

On April 25, 2012, Flynn and EMR entered into a one-year written listing agreement (the "Listing Agreement") for Flynn to market and sell EMR's property in Eddystone, Pennsylvania (the "Property"). Under the Listing Agreement, if Flynn procured a sale of at least $15 million during the term of the Listing Agreement or for a one-year tail, then Flynn would receive a 3% commission. The Listing Agreement also contained a fee-shifting provision that permits the "prevailing party" to recover "from the breaching party" its attorneys' fees. (ECF No. 15-6 at ¶ 16.)

In April 2013, Flynn and EMR signed a letter extending their relationship for another year. From April 2014 until June 2016, the record contains no evidence of a written agreement between Flynn and EMR. During that time, it appears there was an agreement of sale for the Property, which fell through. In a letter dated June 6, 2016 (the "2016 Extension"), Flynn acknowledged that the agreement expired on April 22, 2014, and proposed extending the contract for 180 days, until December 5, 2016. (ECF No. 15-8.) EMR agreed. When that agreement expired, the parties did not enter into any additional agreements.

### B.  The End of The Working Relationship

Although the 2016 Extension had expired, Flynn and EMR continued to talk. The two sides met in October 2017 to discuss EMR's disappointment with Flynn's efforts. (Flynn claims that the meeting was about a "marketing plan," but it cites no evidence to support that assertion. (ECF No. 16-3 at ¶ 13.)) In December 2017, Flynn emailed EMR about again renewing the Listing Agreement. In that email, Flynn acknowledged that the 2016 Extension "expired on December 5, 2016." (ECF No. 16-8.) EMR did not agree to the proposed renewal.

According to Flynn, on November 17, 2017, it showed the Property to Alliance HSP. The evidence before the Court on this point is a single email from Flynn to EMR reporting that a different broker, CBRE intended to show the Property and reporting that Alliance "followed up" with Flynn about its interest in the Property. (ECF No. 18-34.) On December 17, 2017, Flynn delivered a letter of intent from Alliance offering to buy the Property for $13.275 million. EMR never responded to Alliance's offer.

In a letter dated April 8, 2018, EMR informed Flynn that, "as a matter of clarification," it was "terminating any listing agreement or relationship with The Flynn Company concerning [the Property]." (ECF No. 16-12.) On April 26, 2018, EMR contracted with CBRE to sell the property. On May 9, 2018, Flynn sent CBRE an offer from a potential buyer for the Property. The email containing that offer acknowledged that CBRE represented EMR, and Flynn represented the potential buyer.

On May 15, 2018, CBRE forwarded EMR an offer from Alliance to purchase the Property for $15.075 million. Two days later, CBRE emailed EMR to inform it that Alliance increased its offer to $15.5 million. EMR and Alliance signed an agreement of sale, and the sale closed on September 5, 2018. In the agreement of sale, Alliance represented and warranted that, except for CBRE, it has "not dealt with any broker, finder or agent in connection with" the transaction. (ECF No. 15-27 at § 14.)

### C. Procedural History

In July 2018, Flynn, through counsel, demanded that EMR pay it a commission for the sale of the Property. EMR refused, so Flynn sued. On October 29, 2018, Flynn brought an action against EMR in the Pennsylvania Court of Common Pleas for breach of contract and unjust enrichment, seeking to recover a brokerage commission for the sale of the Property. Flynn

discontinued that action. When it did so, it marked the discontinuance "with prejudice." But it later amended the discontinuance, and the state court docket now reflects that the discontinuance was "without prejudice."

On June 6, 2019, Flynn brought this action for the same claims. The Court denied EMR's motion for judgment on the pleadings. Both parties moved for summary judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

4

### III. DISCUSSION

#### A. Claim Preclusion/*Res Judicata*

The docket in Flynn's state court action lists Flynn's voluntary discontinuance as "without prejudice." When the Court denied EMR's Motion for judgment on the pleadings, it held that it had no basis to disregard that designation. EMR has no new facts, or even a new argument. It just regurgitates the same argument it made before. It fares no better this time. If EMR wants to challenge Flynn's amendment of its discontinuance from "with prejudice" to "without prejudice," it must do so in state court.

#### B. Breach of Contract

Pennsylvania's Real Estate Licensing And Registration Act ("RELRA") provides that a real estate broker "may not perform a service for a consumer of real estate services for a fee, commission or other valuable consideration . . . unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer." 63 P.S. § 455.606a(b)(1). However, the statute allows an "open listing agreement or a nonexclusive agreement for a licensee to act as a buyer/tenant agent may be oral if the seller or buyer is provided with a written memorandum stating the terms of the agreement." *Id.* at (b)(2).

When the General Assembly adopted RELRA, it modified the common law of contracts, which normally allow for implied-in-fact contracts and for oral contracts. In doing so, it placed a heightened burden on real estate brokers to document their arrangements in writing. *See Domico v. Downey*, No. 06-2474, 2007 WL 2108243, *6 (E.D. Pa. 2007). The General Assembly adopted RELRA in part to reduce after-the-fact commission disputes—like this one—by having written agreements that would clarify the parties' obligations. *See Michael Salove Co. v. Enrico Partners, L.P.*, 23 A.3d 1066, 1070 (Pa. Super. 2011).

5

RELRA's requirement for a written fee agreement disposes of Flynn's breach of contract claim. Flynn had an exclusive listing agreement with EMR. The 2016 Extension extended that agreement through December 5, 2016. But by its own terms, the 2016 Extension expired on that date. After that, Flynn did not have a written agreement providing for a commission for sale of the Property. RELRA bars Flynn from seeking a commission under those circumstances.

Flynn seeks to escape this reality by claiming that its December 2017 proposal to extend the listing agreement satisfies RELRA's requirement that there be a writing. The problem for Flynn is that RELRA does not just require a "writing." It requires a "written agreement . . . that is signed by the consumer." 63 P.S. § 455.606a(b)(1). EMR never signed the proposed extension, so RELRA bars it.

Flynn also claims that it did not need a signed, written agreement because it had an open listing agreement after the expiration of the 2016 Extension. There are two problems with that argument. First, RELRA does not permit all open listing agreements to be oral. Instead, the statute permits agreements for a licensee to act as a "buyer/tenant agent." *Id.* at (b)(2). Flynn was not going to act as a buyer's agent or a tenant's agent for EMR. It was going to act as a seller's agent. If the General Assembly meant to permit an open listing as a seller's agent to be oral, it would have said so. Its failure to do so indicates that it did not intend the exception to the rule requiring written agreements to extend to sellers' agents. *See PPL Elec. Util. Corp. v. City of Lancaster*, 214 A.3d 639, 657 (Pa. 2019) (General Assembly's omission of provision "strongly implies" it did not intend to include such a provision).

Second, Flynn could not have an open listing agreement with EMR because no written agreement specified such a term. The Pennsylvania Real Estate Commission has promulgated regulations under RELRA that require a written agreement to include a description of "the services

6

to be provided." 49 Pa. Code § 335.31(a)(4). An agreement for an open listing would be one of those services. There is no writing between Flynn and EMR specifying an open listing agreement, though. In fact, Flynn's proposal in December 2017, which it claims satisfies the requirement for a written agreement, proposes an exclusive listing. (ECF No. 18-14 at 3.) Because Flynn has no written agreement specifying an open listing agreement, it cannot now claim that it had such an arrangement.

Flynn's argument that the Listing Agreement converted from an exclusive agreement to an open one also lacks factual support. The Listing Agreement, and the 2016 Extension that extended it, created an exclusive listing arrangement, not an open listing agreement. Those are different economic relationships, and one assumes parties to them enter into them on different economic terms. Flynn cannot import the terms of an exclusive listing agreement into an open listing agreement without substantially more proof that the parties agreed to do so. *See Michael Salove*, 23 A.3d at 1070.

      **C.**    **Unjust Enrichment**

Pennsylvania courts do not permit a claim for unjust enrichment when an express contract governs a real estate broker's relationship. *See, e.g.*, *Coldwell Banker Phyliss Rubin v. Romano*, 619 A.2d 376, 381 (Pa. Super. Ct. 1993). When "the parties' relationship was based on a series of written contracts and an express contract exists on the very issue of commission, no quantum meruit/unjust enrichment recovery is permitted." *Id.*; *see also Lyons v. Kimco Realty Corp.*, 2012 WL 6931468, No. 02915, *12 (Pa. Com. Pl. Oct. 3, 2012); *Summit Mgmt. Co. v. Tow Path Valley Bus. Park Dev. Co.*, No. 2006-C-1216, 2006 WL 4013299, *11 (Pa. Com. Pl. Nov. 2, 2006); *Situs Props. v. Peter Roberts Enters.***,** 2005 WL 293686, No. 002119, *13 (Pa. Com. Pl. Jan 26, 2005); *Schutter v. Herskowitz*, No. 07-cv-3823, 2008 WL2726921 (E.D. Pa. July 11, 2008).

The Listing Agreement and its various extensions governed Flynn's relationship with EMR. The relationship therefore does not allow for an unjust enrichment claim. That is particularly true where, as here, the contract has a termination date. If the Court were to allow an unjust enrichment claim, it would undermine the parties' written agreement to end their relationship on a date certain. And, if Flynn or any other broker could recover on an unjust enrichment theory, it could evade RELRA's written-agreement requirement. The General Assembly intended otherwise.

### D.     Attorney's Fees Provision

Pennsylvania law permits parties to include fee-shifting provisions in their contracts. *See Bayne v. Smith*, 965 A.2d 265, 267 (Pa. Super. 2009). The fee shifting provision in the Listing Agreement permits the "prevailing party" to recover fees from the "breaching party." (ECF No. 15-6 at ¶ 16.) The Court concludes that this provision is ambiguous. Under Pennsylvania law, a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *See Kripp v. Kripp*, 849 A.3d 1159, 1163 (Pa. 2004). One could read the fee shifting provision to authorize whichever party prevails to recover its fees. Or one could read that provision to authorize only a party that proves a breach of the Listing Agreement to recover its fees.

Under Pennsylvania law, the interpretation of an ambiguous contract is a question of fact. *See id.* There is no factual dispute before the Court, however. The only evidence before the Court about the meaning of the fee-shifting provision comes from Flynn's principal and corporate representative, who testified that understood the provision to mean that "if one party starts a lawsuit because the other party's in breach of this contract, the winning party will not have to pay their legal fees because the other party will pay for them." (ECF No. 18-9 at 16.) Flynn has not offered

any contrary evidence to demonstrate a disputed factual issue. The Court therefore concludes that the fee shifting provision in the Listing Agreement permits any prevailing party to recover its fees.

## IV. CONCLUSION

Flynn did not secure a signed agreement from EMR after its last written exclusive listing agreement expired in December 2016. Nor did it confirm in writing the existence of an open listing agreement. Flynn cannot satisfy RELRA's prerequisite for a brokerage commission. It also cannot circumvent RELRA's writing requirement by claiming unjust enrichment. The Court will therefore grant EMR's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

October 6, 2020